MOLLY SEIDEMAN and HOWARD L. SEIDEMAN, Respondents, v. THE CITY OF NEW YORK, Appellant.

Second Department, June 15, 1942.

*Edmund H. H. Caddy* [*William C. Chanler, Corporation Counsel,* and *Stanley Buchsbaum* with him on the brief], for the appellant.

*Cornelius Bregoff,* for the respondents.

Order granting plaintiffs' motion under section 292-a of the Civil Practice Act (Laws of 1941, chap. 929), to examine the defendant municipal corporation through one of the engineers in its department of docks, affirmed, with ten dollars costs and disbursements, the examination to proceed on five days' notice. No opinion.

LAZANSKY, P. J., HAGARTY, ADEL and CLOSE, JJ., concur; JOHNSTON, J., dissents and votes to reverse the order and to deny the motion, with opinion.

JOHNSTON, J. (dissenting). The defendant, The City of New York, maintains and operates a ferry between the borough of Manhattan and the borough of Richmond. Plaintiff-wife, a pas-

senger on one of defendant's boats, was injured while the boat was being docked at St. George, Staten Island. She seeks damages for the injuries sustained, and her husband sues for loss of services and expenses. Plaintiffs' motion to examine the defendant by one of its engineers, employed in the department of docks, bureau of ferries, was granted.

While ordinarily examinations before trial rest in the sound discretion of the court, the sole issue presented is one of law and involves the construction of section 292-a of the Civil Practice Act (Laws of 1941, chap. 921).

The statute reads as follows: " Order for taking testimony of municipal corporation in certain cases. Where a cause of action is asserted against a municipal corporation arising out of the ownership, operation or maintenance of a public utility by such municipal corporation or by such municipal corporation's transferor or assignor, the court may, in its discretion, upon motion made upon notice, order that the testimony of one or more of the officers or employees of such municipal corporation, which is material and necessary, be taken by deposition. Any such examination granted in a negligence action shall not be limited so as to prevent or restrict the inquiry concerning the facts of negligence, liability or damages."

As the statute does not define a " public utility," recourse must be had to judicial construction to ascertain the legislative intent, bearing in mind the general spirit and purpose underlying the enactment of the statute. In my opinion a ferry is not a public utility within the meaning of the statute. This conclusion is predicated on two basic reasons: *First,* the events leading up to the enactment of the statute show that it never was the intention of the Legislature to include ferries as public utilities; *second,* the origin and history of ferries forbid their inclusion in the category of public utilities and indicate that ferries are *sui generis.*

Section 292-a became effective on May 1, 1941. For several years prior to 1941 the Judicial Council recommended a wide extension of the privilege of examinations before trial. Thus, it sought to have substituted for the requirement that testimony may be taken only when it is " material and necessary," the simple requirement that the testimony shall be " relevant to any issue." The purpose of this proposal was to change the rule enunciated by the courts limiting the examination to those matters upon which the moving party had the affirmative. The Judicial Council also sought to have established a uniform practice with respect to examinations in negligence actions by expressly providing that in such actions " the examination shall not be limited so as to prevent or restrict the inquiry concerning the facts of negligence,

liability or damages." The purpose of this proposal was to make mandatory a general examination in negligence actions which the Appellate Division of the First Department does not allow. Finally, it sought to have included specifically a " municipal corporation " within the definition of corporations which may be examined. The reason for this proposal was that if a municipal corporation is subject to civil liability, then it should be equally subject to examination before trial. It was suggested that such a change was necessary in view of the decisions holding that the then existing practice provisions permitting the examination of corporations did not authorize the examination of a municipal corporation. (Judicial Council, Third Annual Report, 1937, p. 247 *et seq.;* Fourth Annual Report, 1938, p. 53.)

The recommendations of the Judicial Council apparently went unheeded until 1940. In that year the Legislature passed a bill which provided that municipal corporations were subject to examinations before trial to the same extent as private corporations. However, because of the opposition of the municipal authorities throughout the State, the Governor vetoed the bill. In June, 1940, the city of New York acquired the privately owned and operated Rapid Transit system. The Judicial Council then made what it called a " limited recommendation " to the Legislature with respect to permitting the examination of a municipal corporation, namely, that it should be permissible to examine a municipal corporation " in the discretion of the court and to the extent which the court may deem desirable, in actions arising out of the operation of a public utility by the municipal corporation." (Judicial Council, Seventh Annual Report, 1941, p. 45.) The statute heretofore set out was then enacted.

In view of the legislative history of the statute it seems clear that the principal purpose of the Legislature in adopting this section was to permit a municipal corporation to be examined in a cause arising out of its ownership or operation of a rapid transit railroad or some similar transportation facility. The title of chapter 921 (*supra*), as well as the heading of this new section, specifically states that it relates to the taking of the deposition of a municipal corporation " in certain cases." The consistent refusal of the Legislature or the Governor to adopt the proposal making municipal corporations subject to examinations generally is the best evidence of the legislative intent to restrict the examination of municipal corporations, in accordance with the " limited recommendation " of the Judicial Council.

Such intent would be thwarted if the words " public utility " be interpreted to include a ferry. If the construction of the majority

be adopted, then every service not of a governmental nature which the municipality renders or makes available to the public, such as the care and maintenance of streets, the collection of refuse, the maintenance of incinerators, the maintenance of a city broadcasting station, etc., must be included. Speaking broadly, all these facilities are denominated public utilities. Yet it has been held, and quite properly, that the collection of refuse is not a public utility within the meaning of section 292-a. (*Olsen* v. *City of New York*, 177 Misc. 99.) It also has been held that a radio broadcasting station is not a public utility in the sense that a railroad or common carrier is. (*Pulitzer Pub. Co.* v. *Federal Communications Commission*, 94 F. [2d] 249. See, also, *Sanders Bros. Radio Station* v. *Federal Communications Comm.*, 106 id. 321, 324; *Yankee Network* v. *Federal Communications Comm.*, 107 id. 212, 220.)

In the *Pulitzer Publishing Co.* case (*supra*, p. 251) it is stated that a public utility, generally speaking, " comprehends any facility employed in rendering quasi public service such as waterworks, gas works, railroads, telephones, telegraphs, etc. The use and enjoyment of such facilities the public has the legal right to demand; * * *." The court held that a radio broadcasting station does not come within this definition of a public utility, for the reason that the public does not have the legal right to demand any such service. Similarly it may be said that a ferry does not come within the definition because, as matter of law, the public likewise does not have the legal right to demand ferry service from the city.

In recent years, particularly in the metropolitan area, to those dealing with the law the words " public utility " have become synonymous with the rapid transit, gas, electric and telephone facilities, the use of which the public has a right to expect and which are regulated and controlled by the Public Service Law and are under the jurisdiction of the Department of Public Service. (Pub. Serv. Law, §§ 2, 5.) This conception of the term frequently appears to have received statutory sanction as well as constitutional recognition. (Cf. Gen. Corp. Law, § 34; Gen. Mun. Law, § 360; Tax Law, § 186-a, subd. 2; N. Y. City Local Laws of 1933, Local Law No. 19; State Const. art. 3, § 18.)

Therefore, if we give to the words " public utility," as used in section 292-a, their current and commonly understood legal connotation, they should be limited to such services and functions performed by a municipal corporation as would be subject to the Public Service Law. That law specifically provides that it does not extend to " a municipally owned ferry nor a ferry company

operating under a lease from a city," and that such ferries are not to be deemed common carriers subject to its provisions and the jurisdiction of the Department of Public Service. (Pub. Serv. Law, § 2, subd. 9.)

The reason for the exclusion of a municipally owned ferry from the Public Service Law may be found in the history of ferries in this State. Contrary to popular impression, the traditional concept of a ferry is that of a highway over narrow waters or a continuation of the highway from one side of the water over which it passes to the other. In fact, the provisions of law with respect to the operation of ferries previously were contained in section 270 of the Highway Law, and not until 1936 were they transferred to the Navigation Law (§ 110 et seq.). Under these provisions (except in the city of New York), the County Court or the City Court is still authorized to grant a license for the operation of a ferry to the " owner of the land through which that part of the highway adjoining the ferry shall run, * * *." He has the exclusive right to such license unless he waives it, as provided by the statute.

As early as 1730, by the Montgomerie Charter, the city of New York received the exclusive franchise to establish and maintain ferries around the island of Manhattan and from that island to the opposite shores, with power to grant such right to others. (Mayor, etc., of N. Y. v. Starin, 106 N. Y. 1, 11–15.) Pursuant to this exclusive franchise the city of New York has continued to operate ferries; and its ferry operations are authorized by the City Charter and the Administrative Code. (Greater N. Y. Charter, §§ 824a, 826; N. Y. City Charter, § 704, subd. e; N. Y. City Adm. Code, § 704e–2.0.) In the Dongan Charter of 1686 the city of Albany also received similar ferry privileges across the Hudson river. (Aikin v. Western Railroad Corporation, 20 N. Y. 370.)

As far as the city of New York is concerned, the exclusive right which it possesses under the Charter has been held to repeal by implication the right of any other person to establish a ferry over the territorial waters of the city under section 110 of the Navigation Law. (City of New York v. N. J. & S. I. Ferry Co., 92 Misc. 40; affd. on opinion of KAPPER, J., 173 App. Div. 496.) To protect this exclusive right to maintain and operate ferries, the Penal Law also provides that it is a misdemeanor for any one to operate a ferry for profit " without authority of law." (Penal Law, § 870.)

In other words, the city of New York, even prior to its incorporation and prior to the formation of the State, possessed a vested and exclusive property right to maintain and operate ferries; and the State has never attempted to curtail this right.

The effect of these charter and statutory provisions is to place the operation of a ferry by the city of New York in a class by itself and to take it out of the category of a public utility. The city's operation of ferries is *sui generis*. Hence, it cannot be deemed to come within the purview of section 292-a of the Civil Practice Act. To give section 292-a any other interpretation would, in effect, result in making municipal corporations subject to examinations before trial precisely to the same extent as private corporations, since there is hardly any service performed by the city which is not affected with a public interest and which may not, in a popular sense, be deemed a public utility. The Legislature has deliberately refused to make such an extension of the rules relating to examinations. Regardless of the desirability of such an extension, it is not for the courts, by judicial construction, to permit that which the Legislature has refused to allow.

The order granting the examination before trial of the city of New York should be reversed on the law, and the motion should be denied.